UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                    **MEMORANDUM OF LAW & ORDER**
                                      Criminal File No. 13-274 (MJD/LIB)

TERRY DEAN ICEMAN,

       Defendant.

Manda M. Sertich, Assistant United States Attorney, Counsel for Plaintiff.

Douglas Olson, Assistant Federal Defender, Counsel for Defendant.

## I.   INTRODUCTION

This matter is before the Court upon the Government's Motion for Revocation of Release Order [Docket No. 15], which requests that the Court revoke the Magistrate Judge's Order Setting Conditions of Release issued on November 22, 2013, the same day as the detention hearing held in Duluth, Minnesota [Docket No. 13]. This appeal is pursuant to 18 U.S.C. § 3145(a).

## II.  BACKGROUND

1.  **Detention Hearing**

A detention hearing was held before the Magistrate Judge on November 22, 2013. The Government presented evidence to the Court, through the testimony of Special Agent Craig Heidenreich of the Federal Bureau of Investigation, who participated in the investigation of the instant offense. The following account is based upon the testimony and evidence presented at the hearing.

From the night of July 17, 2013, to the morning of July 18, 2013, Defendant Terry Dean Iceman was partying with his then-girlfriend L.S., her friend C.S., and C.S.' s boyfriend Daryl Raincloud at Mr. Raincloud's residence. In the morning, after Mr. Raincloud left the house, Defendant, who had been drinking heavily, began acting strangely. L.S. and C.S. locked Defendant out of the house, and he continued to drink outside.

The two women allowed Defendant back into the house around 9:00 a.m., and he immediately began throwing things and yelling. C.S. called emergency dispatch and told them that Defendant was fighting L.S. Officer Ybarra was dispatched to the scene, but because Mr. Raincloud's residence was in a remote location, it took about 40 minutes for her to travel there. In the meantime, Defendant dragged L.S. by her hair outside to a smoldering fire pit and

attempted to put her in it.  L.S. was able to break free from Defendant and run back into the house, where she made a second call to emergency dispatch, urging them to come soon.  She then went back outside to tell Defendant that police were on the way.

Defendant grabbed L.S. again and tore off her clothes.  C.S. then attempted to intervene and hit Defendant, but Defendant kicked C.S. in the arm.  C.S. went back into the house to call emergency dispatch again; however, she was unable to do so, as the phone had stopped working.  Defendant then tore off L.S.'s underwear, and, despite L.S.'s continuous attempts to fight back, Defendant raped her.

After raping L.S., Defendant wrapped her underwear around her neck and dragged her to the fire pit once again. Before they reached the fire pit, the underwear tore.  Defendant then punched L.S. in the face several times.

Officer Ybarra arrived and observed L.S. sitting on the ground with no pants on.  Defendant was standing above her.  As Office Ybarra exited the car, Defendant started toward the wooded around behind the house.  Officer Ybarra identified herself and told Defendant to stop, but he continued into the woods.

Officer Ybarra caught up to Defendant, who then physically resisted arrest until Officer Ybarra was able to handcuff him and put him into the squad car.

Law enforcement learned from L.S. that Defendant had raped her. C.S. told law enforcement that she had witnessed everything but the actual rape, as she was inside of the house during that time attempting to call emergency dispatch. However, she had seen Defendant tearing off L.S.'s clothes and later dragging her to the fire pit while strangling her with her underwear. Police took photographs of both L.S. and C.S.'s injuries. Police also found L.S.'s torn underwear in Defendant's pocket when he was booked at the Red Lake Detention Center. The Government also obtained medical records and DNA evidence consistent with L.S. and C.S.'s accounts of the incident.

2.   **Procedural History**

On November 13, 2013, Defendant was charged by grand jury Indictment with the following counts: Count 1: Aggravated Sexual Abuse in violation of 18 U.S.C. §§ 1151, 1153(a), 2241(a)(1), and 2246(2); and Count 2: Strangulation in violation of 18 U.S.C. §§ 113(a)(8), 1151, and 1153(a).

On November 22, 2013, a hearing on the United States' motion for detention was held before the Magistrate Judge. The Magistrate Judge

determined that conditions of release did exist warranting Defendant's release. As conditions of his release, Defendant was ordered to submit to supervision by Probation and Pretrial Services as directed; to surrender his passport and not obtain a passport or other international travel documents; to avoid traveling outside of Duluth, Minnesota, without prior authorization from Probation and Pretrial Services; and to avoid all contact with the victim in the case or witnesses to the offense.

Defendant was also ordered to reside at a halfway house, specifically Bethel House in Duluth, Minnesota. Defendant was also prohibited from possessing a weapon, using alcohol, or using any controlled substance. The Magistrate Judge ordered that he submit to drug testing and participate in substance abuse treatment. The Magistrate Judge also imposed a curfew on Defendant, as directed by the Pretrial Services Officer. Finally, Defendant was ordered to submit to location monitoring (as directed by the Pretrial Services Officer) and to report all prior offenses to Pretrial Services as soon as possible.

The Government appeals this release order, arguing that the Government established a rebuttable presumption for detention at the detention hearing, and this presumption was not adequately rebutted by Defendant. The Court has

conducted a de novo review.  The Court has considered the testimony presented before the Magistrate Judge on November 22, 2013, as well as the exhibits admitted into evidence.

## III.   PRETRIAL DETENTION STANDARD

Title 18 of the United States Code, Section 3142(e), provides that pretrial detention may be ordered by a court only if the court finds, after a hearing, that there is (1) "clear and convincing evidence that no release condition or set of conditions will <u>reasonably assure</u> the safety of the community" and (2) a showing by a preponderance of the evidence that "no condition or set of conditions will <u>reasonably assure</u> the defendant's appearance."  <u>United States v. Abad</u>, 350 F.3d 793, 797 (8th Cir. 2003).  In assessing whether there are conditions of release that will assure the defendant's appearance and the safety of any other person and the community, the Court must consider the following factors:

> (1)   The nature and circumstances of the offense charged, including whether the offense is a crime of violence, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed or involves a narcotic drug;
>
> (2)  the weight of the evidence against the person;
>
> (3)  the history and characteristics of the person, including–

> (A)  the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> (B)  whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4)  the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

A rebuttable presumption exists that there are no conditions of release to assure the safety of any other person and the community if:

> (A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed;
>
> (B) the offense described in subparagraph (A) was committed while the person was on release pending trial for a Federal, State, or local offense; and
>
> (C)  a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described in subparagraph (A), whichever is later.

18 U.S.C. § 3142(e)(2). One of the offenses described in subsection (f)(1), which triggers subsection (A), is a "crime of violence." A "crime of violence" is defined in 18 U.S.C. § 3156(a)(4)(A) as "an offense that has an element of the offense the

use, attempted use, or threatened use of physical force against the person or property of another."

## IV. ANALYSIS

Defendant argues that the decision to conditionally release Defendant pending trial is supported by the evidence, the Pretrial Services Report, and Defendant's criminal history. The Court disagrees.

### A. Whether Defendant Is a Flight Risk

The Court concludes that the evidence shows that no conditions will assure Defendant's appearance in court for future proceedings in this matter. Defendant argues that his placement at Bethel Halfway House in Duluth, Minnesota, will assure his appearance in court because the more positive environment of the halfway house will prevent his alcohol use and other erratic behavior.

Nevertheless, the Court concludes that the Government has shown by a preponderance of the evidence that release will result in a serious risk of flight in the present case. Defendant's history shows that he has failed to appear in Tribal Court several times in the past. This past behavior, considered along with Defendant's extensive history within the criminal justice system, demonstrates

that no condition or combination of conditions will reasonably assure Defendant's appearance at future proceedings.

### B. Whether the Presumption of Danger to the Community Was Established and Adequately Rebutted

The Court concludes that the Government has established a rebuttable presumption that Defendant is a danger to the community pursuant to 18 U.S.C. § 3142(e)(2).  First, element (A) of the test for establishing a rebuttable presumption is met because Defendant was convicted of a crime of violence in the past.  That crime was an Indecent Liberties conviction based on Defendant's sexual assault of a three-year-old child.  This incident was undoubtedly a crime of violence, as the record indicates that Defendant used physical force against the child.

Similarly, the Court concludes that elements (B) and (C) of the presumption are also met.  These elements require that the past offense was "committed while the person was on release" and that the conviction occurred less than five years ago.  Here, the Indecent Liberties conviction occurred on May 29, 2009, less than five years ago.  (Detention Hearing - Pretrial Services Report ("PSR"), at 5.)  Furthermore, Defendant was convicted of the Indecent Liberties offense while he was on release because he had a Warrant to Apprehend

outstanding in tribal court (issued on February 13, 2008) for a Criminal Damage to Property charge at the time of his Indecent Liberties conviction. (PSR, at 4.)

Because all elements have been met, the Court concludes that the rebuttable presumption is established. United States v. Abad, 350 F.3d 793 (8th Cir. 2003), provides that, "[i]n a presumption case . . . a defendant bears a limited burden of production—not a burden of persuasion—to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." (citation omitted). In Abad, the defendant met the burden of limited production to rebut the presumption by providing the court with a pretrial report, letters from community members, and evidence that his family was willing to act as third-party custodians. Id. at 798.

Here, Defendant has not met this limited burden of production because Defendant has provided no evidence showing that he does not pose a danger to the community or is not a flight risk. The evidence before the Court and the PSR only suggest the opposite. The Court therefore concludes that the presumption favoring detention has not been rebutted, and Defendant should be detained.

    C.    **Section 3142(g) Factors**

Even if the presumption in favor of detention had been adequately rebutted by Defendant, the presumption is still considered. The Eighth Circuit

10

noted in Abad that, when a defendant meets "his burden of production to rebut the detention presumption . . . . the presumption favoring detention does not disappear, but remains for consideration" along with the 3142(g) factors. Abad, 350 F.3d at 797-98. The Court concludes that the four 3142(g) factors, considered along with the presumption, all weigh heavily in favor of Defendant's detention. In other words, detention of Defendant is strongly supported by (1) the nature and circumstances of the offense, (2) the weight of the evidence, (3) the history and characteristics of the defendant, and (4) the nature and seriousness of the danger to any person or the community. See 18 U.S.C. § 3142(g).

Regarding the first factor (the nature and circumstances of the offense), the instant offense involved violent facts and therefore constituted a "crime of violence" against the victim because the Defendant raped and beat his girlfriend in broad daylight and attempted to burn and strangle her. Therefore, this factor weighs heavily in favor of detention.

The second factor (the weight of the evidence against the person) also weighs heavily in favor of detention because the Government has strong evidence of the offense conduct, which includes witness testimony, medical records, emergency dispatch recordings, and DNA evidence. Similarly, the Court

concludes that the third factor (the history and characteristics of the defendant) weighs heavily in favor of detention as well. While it is true that Defendant has committed no felonies in the past and has never been to prison, the Defendant nonetheless has a very extensive criminal history that is riddled with violent behavior and alcohol abuse.

Finally, the Court concludes that the fourth factor (the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release) also weighs in favor of detention. The record indicates that he has had a physically abusive relationship with L.S. and that L.S. fears the Defendant. While Defendant states that his relationship with the victim is now over and that he has not been in contact with the victim since the day following his arrest, this argument is unpersuasive in light of the great amount of evidence showing Defendant's tendency to behave violently toward others and disregard the rule of law. Furthermore, Defendant's history of violence strongly suggests that he is also a danger to others in the community.

Based upon these factors, the Court concludes that there is a strong basis for detention in the present case. Therefore, the Court revokes the Magistrate

Judge's Order Setting Conditions of Release and orders that Defendant shall remain detained pending trial.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. The Government's Motion for Revocation of Release Order [Docket No. 15] is **GRANTED**. The Defendant shall be detained pending trial.

2. The Order Setting Conditions of Release entered by a United States Magistrate Judge on November 22, 2013 [Docket No. 13] is **VACATED**.

Dated: December 20, 2013      s/ Michael J. Davis
                                                  Michael J. Davis
                                                  Chief Judge
                                                  United States District Court