UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

UNITED STATES OF AMERICA,                     No. 13-cr-274 (MJD/LIB)

          Plaintiff,

v.                                                            **REPORT AND RECOMMENDATION**

Terry Dean Iceman,

          Defendant.

---

     This matter came before the undersigned United States Magistrate Judge upon the parties' pretrial motions. This case has been referred to the undersigned Magistrate Judge for report and recommendation, pursuant to Title 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motion hearing on January 10, 2014, regarding the parties' pretrial discovery motions,[1] Defendant Terry Dean Iceman's Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 28], and Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 29]. At the motion hearing, Defendant withdrew his Motion to Suppress Evidence Obtained as a Result of Search and Seizure, [Docket No. 28], as moot. For reasons discussed below, the Court recommends that Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No. 29], be **DENIED**.

## I.       BACKGROUND AND STATEMENT OF FACTS[2]

### A.      Background

---

[1] The Court addressed the parties' discovery motions by a separate Order, [Docket No. 43].
[2] The facts are derived from the January 10, 2014, testimony of FBI Special Agent Charles Bonser and Government Exhibits 1 & 2.

Defendant is charged with one count of aggravated sexual abuse and one count of strangulation, in violation of 18 U.S.C. §§ 113(a)(8), 1151, 1153(a), 2241(a)(1), and 2246(2).

Trial is set for March 31, 2014, before the Honorable Michael J. Davis, Chief Judge of the District of Minnesota. (Date Certain Trial Notice [Docket No. 41]).

### B.     Facts

FBI Special Agent Charles Bonser ("SA Bonser") investigates violent crime on the Red Lake Indian Reservation. Specifically with regard to the present case, SA Bonser was assigned to investigate an alleged sexual assault involving Defendant that took place on July 18, 2013, within the exterior boundaries of the Red Lake Indian Reservation.

On August 1, 2013, SA Bonser arrived at the Red Lake Detention Center to interview Defendant in connection with the July 18, 2013, sexual assault. Defendant was in custody at the Detention Center for tribal charges arising out of the July 18, 2013, sexual assault. SA Bonser met Defendant in an interview room at the Detention Center with Red Lake Police Criminal Investigator Paul Smith ("CI Smith"). All three individuals were seated around a table; neither SA Bonser nor CI Smith was armed, and Defendant was not in restraints.

SA Bonser observed that Defendant was cooperative, alert, and oriented. Defendant did not complain about his physical or mental condition, and nothing suggested that Defendant was incapacitated in any way. Nothing suggested that Defendant did not understand why SA Bonser and CI Smith were there or what was happening. SA Bonser read Defendant his Miranda[3] rights and explained to Defendant why he and CI Smith were there. SA Bonser also provided Defendant with FBI form FD-395 Advice of Rights. (Gov't Ex. 1). After SA Bonser explained Defendant's rights, SA Bonser asked Defendant if he understood his rights and explained that if

---

[3] Miranda v. Arizona, 384 U.S. 436 (1966).

he did, he could sign the form indicating as much. Defendant said he understood his rights by replying, "Yeah," and Defendant read and signed form FD-395. (Id.)

SA Bonser recorded the entirety of the interview. (Gov't Ex. 2). At no point during the course of the nearly hour-long interview was Defendant denied food, water, or the ability to use the restroom. At no point during the course of the interview did Defendant ask to terminate the interview, nor did Defendant indicate – either expressly or indirectly – that he did not want to talk. At no point did Defendant ask for an attorney. At all times during the interview, Defendant gave every indication that he understood what was going on. His responses made sense, and nothing suggested that Defendant was impaired by drugs, alcohol, or any other factors. SA Bonser did not raise his voice, make any threats or promises, or otherwise attempt to coerce Defendant.

## II.    DEFENDANT'S MOTION TO SUPPRESS STATEMENTS, ADMISSIONS, AND ANSWERS, [DOCKET NO. 29]

Defendant moves the Court for order suppressing all statements, admissions, and answers made by Defendant prior to, at the time of, or subsequent to his arrest. Defendant argues that (1) any statements, admissions, or answers made by him were made without the assistance or benefit of counsel, in violation of Defendant's Fifth and Sixth Amendment rights; (2) any statements, admissions, or answers made by Defendant prior to, at the time of, or subsequent to his arrest were not given freely and voluntarily, in violation of Defendant's Fourth and Fifth Amendment rights; (3) any statements, admissions, or answers made by Defendant were made without the benefit of a valid Miranda warning or waiver thereof and were thus obtained in violation of Defendant's Fifth and Sixth Amendment rights; and (4) any statements made were the product of

an illegal warrantless arrest made without probable cause. (Def.'s Mot. to Suppress [Docket No. 29]).

Because Defendant was unequivocally in custody[4] during the August 1, 2013, interrogation,[5] because SA Bonser properly administered <u>Miranda</u> warnings,[6] and because nothing in the record currently before the Court indicates that Defendant attempted to invoke any of his <u>Miranda</u> rights at any point during the custodial interrogation, the Court only considers whether Defendant knowingly, voluntarily, and intelligently waived his <u>Miranda</u> rights.

### 1.        Standard of Review

"Even absent the accused's invocation of the right to remain silent, the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [<u>Miranda</u>] rights' when making the statement." <u>Berghuis v. Thompkins</u>, 560 U.S. 370, 130 S. Ct. 2250, 2260 (2010) (<u>citing</u> <u>North Carolina v. Butler</u>, 441 U.S. 369, 373 (1979)). The Court's waiver inquiry involves two analyses: first, waiver must be "voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and second, waiver must be

---

[4] A person is "in custody" for the purposes of <u>Miranda</u> if the individual has been arrested. <u>Stansbury v. California</u>, 551 U.S. 318, 322 (1994).

[5] A custodial interrogation is one that "involves questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966). Interrogation is defined as "express questioning or its functional equivalent," which includes "words or action on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." <u>Rhode Island v. Innis</u>, 446 U.S. 291, 301 (1980). SA Bonser's questioning of Defendant on August 1, 2013, unequivocally constitutes interrogation by law enforcement.

[6] <u>Miranda</u> established a warning that must be given to suspects before the suspects may be subjected to custodial interrogation. A suspect in custody must be advised as follows:

> "He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S., at 479, 86 S.Ct. 1602.

<u>Berghuis v. Thompkins</u>, 560 U.S. 370, 130 S. Ct. 2250, 2259 (2010). Government Exhibit 2, the audio recording of Defendant's custodial interview, demonstrates that SA Bonser properly informed Defendant of his rights, as required by <u>Miranda</u>.

"made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986). The Government bears the burden of demonstrating that a defendant voluntarily, knowingly, and intelligently waived his right to remain silent. Miranda, 384 U.S. at 475.

Proper waiver may exist even absent express statements of waiver. Thompkins, 130 S. Ct. at 2261. "An 'implicit waiver' of the 'right to remain silent' is sufficient to admit a suspect's statement into evidence." Id. (citing Butler, 441 U.S. at 376). Thus, if the Government establishes that law enforcement properly administered Miranda warnings, that the suspect subsequently made uncoerced statements, and the suspect understood his Miranda rights, the Government has made a sufficient showing of implicit waiver. Thompkins, 130 S. Ct. at 2261.

"Although Miranda imposes on the police a rule that is both formalistic and practical when it prevents them from interrogating suspects without first providing them with a Miranda warning, it does not impose a formalistic waiver procedure that a suspect must follow to relinquish those rights." Id. (internal citations omitted). Generally speaking, a court may "presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." Id.; see, e.g., Butler, 441 U.S. at 372-376; Colorado v. Connelly, 479 U.S. 157, 169-170 (1986). A defendant may waive Miranda rights by means less formal than a typical waiver on the record in a courtroom, cf. Fed. R. Crim. P. 11, "given the practical constraints and necessities of interrogation and the fact that Miranda's main protection lies in advising defendants of their rights." Thompkins, 130 S. Ct. at 2262 (internal citations omitted).

In evaluating a defendant's waiver, courts consider the totality of the circumstances surrounding the waiver. Moran v. Burbine, 475 U.S. 412, 421 (1986). Courts consider factors

such as the defendant's intelligence, education, age, familiarity with the criminal justice system, and explicitness of the waiver. United States v. Vinton, 631 F.3d 476, 483 (8th Cir. 2011).

> **2.      Analysis**

Because nothing in the record suggests that voluntariness is at issue, the Court focuses its analysis on whether Defendant knowingly and intelligently waived his Fifth Amendment right to remain silent.[7]

Defendant knowingly and intelligently waived his Miranda rights. First, Defendant expressly stated that he understood his rights by replying, "Yeah," when SA Bonser asked Defendant if he understood. Second, the present record indicates that Defendant was, at all times, alert, oriented, and aware of what was taking place during the course of the interview. Nothing in the present record before the Court indicates that Defendant was in any way impaired or unable to understand his rights and his participation in the custodial interview. Finally, SA Bonser clearly read Defendant his Miranda rights, provided Defendant with a written copy of his rights (Gov't Ex. 1), and clearly explained that by signing the Advice of Rights Form, Defendant indicated that he understood his Miranda rights and was willing to talk. Where there is a showing of properly administered Miranda warnings, the absence of coercion, and the defendant's admitted understanding of his rights, there is a sufficient showing of waiver of rights.

**III.    CONCLUSION**

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

---

[7] Nothing in the record suggests that Defendant's knowing and intelligent waiver is at issue, either. However, for the sake of undertaking a thorough and complete analysis, the Court analyzes these factors.

1.  Defendant's Motion to Suppress Statements, Admissions, and Answers, [Docket No.

    29], be **DENIED**.


Dated: February 6, 2014                                     s/Leo I. Brisbois
                                                            The Honorable Leo I. Brisbois
                                                            United States Magistrate Judge

## N O T I C E

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by February 20, 2014**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections **by March 6, 2014**. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.